IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY A. IVERSEN, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) No. 16 CV 7337 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) Jeffrey T. Gilbert |
| Commissioner, Social Security | ) Magistrate Judge |
| Administration,[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant Gregory Iversen ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's application for disability insurance benefits under Title II of the Social Security Act. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1. [ECF No. 13.] They filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [ECF Nos. 21, 23.] For the reasons discussed below, Claimant's motion for summary judgment is denied, and the Commissioner's is granted. The decision of the Commissioner is affirmed.

**I. PROCEDURAL HISTORY**

Claimant filed an application for disability insurance benefits on June 10, 2013, alleging a disability onset date of January 1, 2008. (R. 219.) After an initial denial and a denial on

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Respondent in this case. No further action is necessary to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reconsideration, Claimant filed a request for an administrative hearing. *Id.* at 93, 106, 119. Claimant, who was represented by counsel, appeared and testified before an Administrative Law Judge (the "ALJ") during a hearing held on January 14, 2015. *Id.* at 36–74. A vocational expert (the "VE") also testified at the hearing. *Id.*

On March 26, 2013, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that he was not disabled under the Social Security Act. *Id.* at 19–29. The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 § C.F.R. 404.1520. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since his alleged onset date of January 1, 2008. *Id.* at 21. At step two, the ALJ found Claimant had the severe impairments of a diabetes mellitus, type I, with diabetic retinopathy and neuropathy. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). *Id.* at 22.

Before step four, the ALJ found Claimant had the residual functional capacity ("RFC") to work at the sedentary level with the following limitations: Claimant must avoid all exposure to work hazards such as unprotected heights and dangerous moving machinery; can never climb ladders, rope, or scaffolding; can no more than occasionally balance, stoop, kneel, crouch, crawl, bend, twist or climb ramps/stairs; and must avoid work requiring reading small print and handling/viewing small objects (1.5 inches or smaller). *Id.* at 23.

Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. *Id.* at 27. Then, at step five, the ALJ found there were jobs that exist in significant numbers in the national economy that Claimant could perform. *Id.* Specifically, the

ALJ found Claimant could work as a preparer, plated products, and a waxer. *Id.* at 28. Because of this determination, the ALJ found Claimant was not disabled under the Social Security Act. *Id.* at 29.

On May 29, 2015, Claimant sought review of the ALJ's decision. *Id.* at 15. On May 16, 2016, the Social Security Appeals Council denied the request for review. *Id.* at 1. The ALJ's decision became the final decision of the Commissioner. *Id.*; *see also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

3

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. ANALYSIS

Claimant presents one issue for review. He argues the ALJ's conclusion at step five was not supported by substantial evidence. Specifically, Claimant contends the ALJ failed to resolve apparent conflicts between the VE's testimony and the *Dictionary of Occupational Titles* (the "DOT").

At step five, the Commissioner bears the burden of proof to show that a significant number of jobs exist in the national economy which a claimant can perform despite his limitations. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). To satisfy her burden, the Commissioner typically relies on two sources, the DOT and the testimony of VEs. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011); *see also Tolbert v. Astrue*, 2008 WL 4449557, at *5 (N.D. Ind. Sept. 26, 2008). Reliable testimony from a VE is sufficient to satisfy the substantial evidence standard at step five. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008); *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). But, when an ALJ relies on a VE's testimony, she

4

must do two things: (1) ask whether the testimony conflicts with the DOT and (2) investigate and resolve apparent conflicts between the two. *Weatherbee*, 649 F.3d at 569; *Pulido v. Colvin*, 2014 WL 3642241, at *3 (N.D. Ill. July 23, 2014); *Reider v. Astrue*, 2008 WL 2745958, at *12 (N.D. Ill. July 11, 2008).[2]

At the hearing in this case, the VE testified that, even with the restriction in Claimant's RFC precluding "work requiring regular reading of small print, and handling/viewing small objects meaning one inch or smaller," Claimant could work as a preparer (DOT § 700.687-062) or a waxer (DOT § 779.687-038). (R. 65–66). The ALJ relied on the VE's testimony and found Claimant was capable of working as a waxer and a preparer. *Id.* at 28. Claimant contends this step five decision is not supported by substantial evidence because the VE's testimony is unreliable. According to Claimant, there were apparent conflicts between the VE's testimony and the DOT that the ALJ did not investigate and resolve. The Commissioner does not argue in response that the ALJ adequately investigated and resolved the supposed apparent conflicts. Instead, the Commissioner asserts there were no conflicts—much less apparent ones—between the VE's testimony and the DOT.

All of the supposed conflicts relate to the visual demands of the two jobs. Claimant's RFC precludes work that requires him to read small print or handle/view small objects (defined as objects that are 1.5 inches or smaller). (R. 23.)[3] The parties agree the DOT is silent on the visual acuity size limitations for the waxer and preparer jobs. As such, their dispute focuses on the DOT's general descriptions of the two positions.

---

[2] A conflict is apparent only "if it is 'so obvious that the ALJ should have picked up on [it] without any assistance.'" *Weatherbee*, 649 F.3d at 570 (quoting *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)).

[3] Claimant notes the ALJ, when questioning the VE, limited the hypotheticals to situations involving objects smaller than one inch, but expressly states that this is harmless error. [ECF No. 21, at 3 n.2]; *see also* (R. 65).

The DOT describes a waxer's work as "[b]rush[ing] [a] coat of wax on glass speedometer and radio dials, leaving stenciled numbers and figures free for etching." DOT § 779.687-038. The VE said a waxer "just simply appl[ies] a coat of wax to keep the product from getting scratched in other area (sic)." (R. 71); *see also id.* at 70. He said waxers do not have to inspect the item for scratches before waxing them. *Id.* at 71. He also testified the DOT does not impose any visual requirements for the job. *Id.*

According to Claimant, a common sense reading of the DOT's description shows the job requires the ability to discern small objects and writing while working. Of course, the text of DOT's description does not state as much. The Court accepts the proposition that stenciled numbers and figures on speedometers and radio dials are smaller than 1.5 inches. But the DOT's description does not indicate that a waxer must be able to discern those numbers and figures in order to do his job. What a waxer must do is brush a coat of wax on an item that is almost certainly larger than 1.5 inches—a speedometer or a radio dial. The result of that brushing is that it leaves the numbers and figures free for etching. The DOT simply says nothing about how the process leaves the numbers and figures free. That means the DOT does not indicate what, if anything, a waxer must do to leave the numbers and figures free.

The Court does not believe common sense clearly supports Claimant's understanding of what a waxer does. As an initial matter, it is not even clear what it means to leave the numbers and figures "free" for etching. Perhaps one could reasonably infer that means the wax must not adhere to the surface area where the stenciled numbers and figures are. But, even if so, common sense does not dictate how that result is accomplished. Claimant's theory seems to be that a waxer, presumably using a very small brush, applies the wax around the tiny figures and numbers. Common sense does not foreclose other, perhaps more reasonable, explanations, such

6

as that the areas where the numbers and figures are have been pretreated. Undoubtedly, there are other potential explanations. The point of this exercise is not to figure out exactly how a waxer does his job. Instead, it illustrates that there is no *apparent* conflict between the DOT's description and the VE's testimony.

At the hearing in this case, Claimant's counsel did not question the basis for the VE's testimony on the grounds that Claimant's RFC made him unable to brush wax so as to leave the numbers and figures free. Claimant's counsel asked between one and three questions each about the following matters: the type and size of the items to be waxed, whether the VE's testimony was based on the DOT and whether he had observed or placed waxers before, whether waxers buffed or engraved items, whether waxers inspect items for scratches, and whether the DOT included other jobs for people who waxed different items. *Id.* at 70–72. Because Claimant's counsel never asked a single question even tangentially related to how a waxer leaves numbers and figures free from wax in the course of his or her job, he failed to identify any non-apparent conflict. Therefore, the ALJ could rely on the VE's testimony even if it was imperfect. *See McDowell v. Berryhill*, 2017 WL 913950, at *6 (S.D. Ind. Feb. 8, 2017), *report and recommendation adopted*, 2017 WL 897304 (S.D. Ind. Mar. 7, 2017); *see also Guerra v. Comm'r of Soc. Sec.*, 2016 WL 6818878, at *4 (N.D. Ind. Nov. 18, 2016); *Minett v. Colvin*, 2015 WL 7776560, at *8 (N.D. Ill. Dec. 2, 2015); *Diaz v. Colvin*, 2013 WL 5460151, at *13 (N.D. Ind. Sept. 30, 2013).[4]

---

[4] Claimant has not cited any case law indicating the VE's lack of experience observing or placing waxers merits remand. Because the VE said his testimony about the waxer job was based on the DOT and the Selected Characteristics of Occupations, not his experience, the Court does not see why that would require remand. The Court is not aware of any authority standing for the proposition that a VE must have experience related to a job before he can testify based on his knowledge of the DOT about whether a claimant could perform it. Moreover, because Claimant did not ask the VE about the basis for his testimony concerning how a waxer performs his job, Claimant did not trigger the ALJ's duty to inquire into the data and reasoning underlying the

Claimant contends there are two conflicts between the DOT and the VE's testimony about the preparer job. Claimant asserts that the DOT says all preparers work in the jewelry industry while the VE testified 25% of preparers work in that industry. This argument relies on a distorted reading of both the DOT and the VE's testimony. The DOT says a preparer performs tasks "in preparing cast jewelry findings for further processing." DOT § 700.687-062. But the DOT clearly indicates not all preparer jobs are in the jewelry industry because it lists three industry designations: jewelry, silverware, and plated ware industries. *Id.* The VE's testimony was consistent with this description. When asked what items a preparer works with, the VE said, "Well it can be pieces of plated silverware, plated jewelry, you know, anything that's plated, metal plated." (R. at 69.) The VE never testified 25% of preparers worked in the jewelry industry. Instead, when asked what percentage of preparers "work with things less than one inch," he answered, "Maybe 25 percent would be under an inch." *Id.* at 70.[5] Therefore, there was no apparent conflict between the DOT and the VE's testimony about industries.

The Court notes the record does not provide evidence indicating whether the VE had a reliable basis for concluding only 25% of preparers worked with items under an inch. The Seventh Circuit has recognized that, if the basis for a VE's testimony is questioned at a hearing, the ALJ should inquire into the matter. *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004). But, in this case, Claimant did not ask the VE what reasoning or data supported this conclusion. Instead, Claimant followed up on the VE's 25% answer by asking a hypothetical

---

VE's opinion. *See Roxbury v. Colvin*, 2014 WL 4115862, at *1 (E.D. Wis. Aug. 19, 2014) ("However, the VE must make the data and reasoning underlying his opinion available on demand, and if the applicant challenges the foundations of the VE's conclusions at the hearing the ALJ must determine whether the purported expert's conclusions are reliable.") (internal citation omitted).

[5] The VE did not testify that all preparers who worked in the jewelry industry work with "things less than one inch." There is no evidence in the record indicating that this is the case.

based on that percentage and then "moving on" to the waxing job. (R. 70.) "When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion . . . ." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), *on reh'g*, 368 F.3d 691 (7th Cir. 2004) ("However, because Barrett's lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited."); *Meyerink v. Colvin*, 2015 WL 773041, at *13 (N.D. Ind. Feb. 24, 2015) ("Nevertheless, claimants are able to trigger a more searching standard simply by asking the VE for the data supporting his bottom-line conclusions.").

Claimant's second argument with respect to the preparer position is that the DOT's description of the job indicates a preparer must be able to feel or see burrs and rough edges that are smaller than one inch. At the hearing, Claimant's counsel asked the VE whether a preparer must have "visual acuity . . . to see burs (sic), sharp edges, scratches, scuffs." (R. 68.) The VE answered, "Actually, no . . . there are no requirements visually for acuity and accommodation." *Id.* at 69. Claimant's counsel pressed further, asking how a preparer would identify the burr or edge if he did not see it, and the VE said, "Well I guess they would feel it." *Id.* Claimant's counsel pushed again, "So they're feeling for sharp edges?", and the VE stuck by his guns, responding, "Yea." *Id.* Immediately after this answer, Claimant's counsel asked the VE if he had observed a preparing when he was working. *Id.* The VE answered said he had seen one person performing a similar job. *Id.*

The Court finds this back-and-forth to be substantively different from the other discussed in this Memorandum Opinion and Order. Although Claimant failed to ask the VE about the supposed conflict with respect to the waxer job, Claimant's counsel explicitly and repeatedly

9

questioned the VE about whether a preparer must be able to see what are essentially small imperfections along the edges of items. After a little back-and-forth, the VE did nothing more than "guess" that the job could be performed without the ability to see fine details. Claimant's cross-examination of the VE amounted to questioning the foundation or factual basis for his conclusion. That line of inquiry thus triggered the ALJ's duty to determine if there was a reliable basis for the VE's testimony. *Donahue*, 279 F.3d at 446. The ALJ did not do so, which was an error.

This error, however, was harmless. The ALJ's finding that Claimant could work as a waxer was supported by the VE's testimony, which constitutes substantial evidence, and the ALJ did not fail to investigate a conflict with the DOT with respect to that testimony. Because there are 1,000 waxer positions in Illinois and 30,000 in the nation, that job alone suffices to support the ALJ's step five determination. *See Moran v. Berryhill*, 2017 WL 1073369, at *12 (N.D. Ill. Mar. 20, 2017) (collecting cases to support the proposition that 1,000 jobs constitute a significant number). As such, any error the ALJ made in assessing whether Claimant could work as a preparer is harmless. *Id.*[6]

## IV. CONCLUSION

Claimant's motion for summary judgment [ECF No. 21] is denied, and the Commissioner's motion [ECF No. 23] is granted. The decision of the Commissioner is affirmed. This is a final judgment.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 8, 2017

---

[6] Because of this holding, the Court need not address the Commissioner's argument that Claimant waived his ability to challenge the VE's testimony and the ALJ's reliance on it.